## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUSTIN MCGUIRE** | ) |
| **45619 Frank Hayden Lane** | ) |
| **Great Mills, MD 20634** | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE ARCHITECT OF THE CAPITOL** | ) |
| **c/o General Counsel** | ) |
| **Ford House Office Building H2-265A** | ) |
| **Second and D Streets SW** | ) |
| **Washington, DC 20515** | ) |
| **Defendant** | ) |
| | ) |

## COMPLAINT

Plaintiff, Justin McGuire, brings this civil action against Defendant, the Architect of the Capitol (AOC) because the AOC has discriminated against him for a variety of reasons including his disability (or perceived disability), his use of FMLA leave, and his protected workplace safety complaints. In addition to the discriminatory treatment and hostile work environment that Mr. McGuire included in Civil Action No. 1:18-cv-00571 (KBJ), this civil action relates to the Architect of the Capitol's decision to terminate Mr. McGuire from his position, which became effective on September 14, 2018. Plaintiff asserts that the termination was discriminatory, based on his perceived disability and retaliation, for his past workplace safety complaints and protected complaints about discrimination and retaliation.

Due to the structure and language of the Congressional Accountability Act, which (at all relevant times) required all discrete claims to be separately exhausted by undergoing counseling and participating in mediation at the Office of Compliance. *See* 2 U.S.C. §§ 1402 ("To commence a proceeding, a covered employee alleging a violation of a law made applicable under part A of subchapter II shall request counseling by the Office."); 1403 (governing mediation); 1408 ("A civil

action may be commenced by a covered employee <u>only to seek redress for a violation for which</u> <u>the employee has completed counseling and mediation</u>.").

## **JURISDICTION**

1.     Plaintiff invokes the jurisdiction of this Court pursuant to the Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), as well as 28 U.S.C. § 1331 (Federal Question).

2.     This is an action authorized and instituted pursuant to the Congressional Accountability Act, (2 U.S.C. § 1301 *et seq*.).

3.     The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4.     Plaintiff was an employee of the Architect of the Capitol until his termination on September 14, 2018.

5.     Defendant Architect of the Capitol (AOC) is an "Employing Office" covered by the Congressional Accountability Act (2 U.S.C. § 1301(9)(D)).

6.     The AOC is headquartered in the District of Columbia.

7.     The Congressional Accountability Act makes it unlawful for the AOC to discriminate against employees based on, *inter alia*, their disability (or perceived disability) (2 U.S.C. § 1311), or their protected workplace safety complaints (2 U.S.C. § 1341). The Act also makes it unlawful for the AOC to "intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by [the] Act." 2 U.S.C. § 1317.

8.     Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely Request for Counseling at the Office of Compliance, on July 30, 2018 (following his receipt of the AOC's July 26, 2018

notice of termination) within 180 days of the discriminatory conduct at issue here.

Plaintiff's request for counseling raised the violations of the Congressional

Accountability Act complained of here.  Plaintiff engaged in the counseling process

and filed a timely Request for Mediation at the conclusion of the Counseling Period,

on September 7, 2018.  The mediation period expired on October 30, 2018.  Plaintiff

files this suit within the time limits defined by the Act (i.e. after the expiration of 30

days from the end of the Mediation Period, and before the expiration of 90-days,

following the end of the Mediation Period).

## **FACTS**

9.      Plaintiff was employed at the Architect of the Capitol between December 2008 and

September 14, 2018.

10.     In December 2008, Plaintiff began his career as an electrician in the Senate

jurisdiction. Plaintiff applied for and attained position as a WG-12 High Voltage

Electrician in the AOC Power Plant in February 2010.

11.     At all relevant times to this complaint, up through August 2017, Plaintiff worked a

rotating shift, which resulted in his working three consecutive days on the day shift,

followed by three days on the night shift.  Additionally, during that period, Plaintiff

was regularly assigned/required to work four hours of overtime each two-week

period.

12.     When Plaintiff worked the night shift, on the rotation mentioned above, he was paid a

10% nighttime differential.

13.     In approximately April 2017, PEPCO replaced a high voltage line in the Capitol

Power Plant.  After the line was replaced, Plaintiff's supervisor instructed Plaintiff to

connect the new line to switchgear that a contractor had installed, but had not yet

tested.  Plaintiff refused to connect the switchgear because he reasonably believed

that it was unsafe to do so, and that connecting the gear to the new line could lead to

the death and/or severe injury of himself and other Power Plant employees.

14. Plaintiff's supervisors, including David Jagoda and Jim O'Keefe, were angry about

Plaintiff's refusal to connect the untested equipment.

15. In the summer of 2017, Mr. McGuire had heart surgery to repair damage to his aorta.

Plaintiff's scheduled return to work date was to be July 19, 2017 and his maximum

FMLA leave would have been through July 25, 2017.

16. On July 17, 2017, Mr. McGuire's cardiologist (Varkey Mathew, MD) issued a report

indicating that Mr. McGuire was cleared to return to work.

17. Despite being cleared by his Doctor, the AOC would not permit Plaintiff to return to

work and the Operations Division managers and staff issued him confusing and

inconsistent directives, including about what documentation he was required to

complete and whether he needed to undergo a fitness for duty exam.

18. On or about July 20, 2017, the AOC approved Plaintiff to return to work, and Plaintiff

returned to work sometime between July 20 and July 24, 2017.

19. When Plaintiff returned to work in July 2017, it was not to his former position

working the rotating shift.  Instead, he was assigned to the day shift, with no

nighttime differential and no overtime.  Another employee had been hired or

promoted to take Plaintiff's position on the rotating shift.

20. On July 24, 2017, Plaintiff contacted Corniece Brown again, and he advised her that

he had not been restored to his position.  On information and belief, Ms. Brown

contacted Plaintiff's supervisor(s) in the Capitol Power Plant and required them to

return Plaintiff to his shift position as of August 9, 2017.

21.     On August 8, 2017 AOC required Plaintiff to undergo a medical surveillance exam, with Dr. Karen Singleton, MD, who is under contract with the AOC to perform such exams.

22.     On information and belief, on or about August 8, 2017, at the behest of the AOC, Dr. Singleton incorrectly issued a report or recommendation to the AOC stating that Plaintiff was not fit to return to duty due to circumstances related solely to Plaintiff's cardiovascular and pulmonary health and not his sleep disorder.

23.     On August 21, 2017 Plaintiff's cardiologist (Dr. Mathew, MD) completed an AOC Medical Certification Form that cleared Plaintiff to "perform work of any kind" and stated that Plaintiff was able to perform all of the essential functions of his position.

24.     On information and belief, at AOC's prompting, on September 8, 2017, the AOC's contract physician issued a "Fitness for Duty Report."  This time Dr. Singleton declared that Plaintiff was not fit to perform the work of a high voltage electrician – based solely on the sleep disorder that the AOC had known about for approximately the prior eight years, and not the cardiovascular and pulmonary conditions on which her August 8, 2017 were allegedly premised.

25.     In her September 8, 2017 report, Dr. Singleton listed numerous restrictions on Plaintiff's ability to work, which rendered it impossible for Plaintiff to perform the work of a high voltage electrician.  For example, among other restrictions, Dr. Singleton stated that Plaintiff was prohibited from "operation of hazardous equipment or work[ing] in the immediate vicinity of hazardous equipment."  This rendered it impossible for Plaintiff to perform the work of a high voltage electrician in the Capitol Power Plant because all or nearly all of the equipment in the Capitol Power Plant is hazardous.

26.    Dr. Singleton's restrictions were not based on any detailed medical examination or diagnosis.

27.    On September 15, 2017 Corniece Brown (AOC Dispute Resolution Specialist in the Diversity, Inclusion and Dispute Resolution Office) contacted Plaintiff to advise him about the process to request an accommodation for any disability.  Plaintiff stated he would consider whether he needed to request an accommodation.

28.    On September 27, 2017, Plaintiff's general physician declared Plaintiff "cleared for full duty."

29.    On information and belief, on October 5, 2017, Jim O'Keefe (Deputy Director of the Utilities and Power Plant Operations) prompted Corniece Brown to again inquire if Plaintiff wished to request an accommodation.

30.    Plaintiff did not request an accommodation.

31.    On information and belief, on October 18, 2017, even though Plaintiff never requested an accommodation and his physician had cleared him to return to work, Jim O'Keefe prompted Liz Buday – the Director of the Diversity, Inclusion and Dispute Resolution Office – to declare that the AOC could not accommodate Plaintiff in his position as a high voltage electrician and declared that there were no open positions for him anywhere in the entire Architect of the Capitol.

32.    On information and belief, at Jim O'Keefe's prompting, Ms. Buday advised Mr. McGuire that he may be eligible for disability retirement benefits – an indication that he would be removed from his position because of the conclusion that the AOC could not accommodate him (despite the fact that he did not ask for an accommodation and his physicians disagreed with the fitness for duty assessment).

33.    On October 31, 2017, Mr. McGuire responded to the denial of accommodation,

stating that he had not adopted or requested any of the accommodations that were listed in Dr. Singleton's report.

34.  Subsequently, Mr. McGuire informed the AOC that he did not require any accommodation because he no longer suffered from any sleep disorder that could affect his ability to perform the functions of his position as a high voltage electrician.

35.  Regardless of the fact that Mr. McGuire had not had any sleep-related episode since prior to his medical leave in the summer of 2017, and his repeated statements that he no longer suffered from any condition that limited his ability to perform his duties, on July 19, 2018, the Architect of the Capitol (by and through Stephen Ayers, but on information and belief in conjunction with Mr. O'Keefe), placed Mr. McGuire on Administrative Leave because the AOC incorrectly stated that Mr. McGuire suffered from a medical condition that limited his ability to perform the duties of his job as a high-voltage electrician safely.

36.  During his administrative leave, Mr. McGuire was required to be "available during the hours of [his] regular work schedule if management should need to contact [him]."

37.  The AOC knew it's alleged medical justification was false because Mr. McGuire had repeatedly informed the AOC that he no longer suffered from the medical condition at issue (narcolepsy), and he had been cleared to return to work at full capacity by his doctor.

38.  By letter dated July 26, 2018, the AOC (by and through Christopher Potter, on information and belief in conjunction with Mr. O'Keefe) terminated Mr. McGuire, with an effective date of August 10, 2018, specifically citing the erroneous Fitness for Duty examination.

39. On August 9, 2018, Mr. McGuire submitted medical documentation which demonstrated that he did not suffer from narcolepsy.

40. By letter dated August 10, 2018 (but not received by Mr. McGuire until August 14, 2018), Mr. Potter informed Mr. McGuire that the effective date of his termination was being deferred, pending the AOC's review of the medical documentation that Mr. McGuire had submitted on August 9, 2018.

41. Mr. Potter's August 10, 2018 letter did not rescind the termination action, and on September 7, 2018 the Architect informed that – despite the medical documentation that Mr. McGuire had provided – his termination would be effective on September 14, 2018.

**COUNT I: DISCRIMINATION BASED ON PERCEIVED DISABILITY**

42. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

43. Defendant AOC violated the Congressional Accountability Act because it removed Plaintiff from his position because of his record of disability or perceived disability.

44. As a result of the AOC's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost income retirement benefits and insurance benefits, and future income.

45. As a result of the AOCs unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience, feelings of depression and anxiety.

**COUNT III: RETALIATION**

46. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

47.     Defendant AOC violated the Congressional Accountability Act because it removed Plaintiff from his position because of his protected workplace safety conduct and complaint (refusing to connect the untested switchgear to the new high voltage line in April 2017).

48.     In addition, or in the alternative, Defendant AOC violated the Congressional Accountability Act because it removed Plaintiff because he made a protected complaint of discrimination and retaliation at the Office of Compliance (Case No. 17-AC-44, filed September 14, 2017), which was later filed as civil action no. 1:18-cv-00571 (KBJ).

49.     As a result of the AOC's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost income retirement benefits and insurance benefits, and future income.

50.     As a result of the AOCs unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience, feelings of depression and anxiety.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by paying him any monetary damages proved at trial in addition to compensatory damages in an amount to be determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and

reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC

Leslie D. Alderman III (D.C. # 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for the Plaintiff